UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA

(Danville Division)

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
APR 17 2025
LAURA A. AUSTIN, CLERK
BY: s/ H. MCDONALD
   DEPUTY CLERK

| | |
|---|---|
| JEFFREY EDWARDS, ) | |
| ) | |
|    Plaintiff ) | |
| ) | |
| v. ) | C.A. # 4:25CV00020 |
| ) | |
| LAURENCE S. WANG, ) | COMPLAINT |
| ) | |
| and ) | |
| ) | |
| CARRIE MAYES, ) | |
| ) | |
| and ) | |
| ) | |
| ERESA AUTRY, ) | |
| ) | |
| and ) | |
| ) | |
| SHEILA CROCKETT, ) | |
| ) | |
| and ) | |
| ) | |
| KIERA FRENCH-TORRES, ) | |
| ) | |
| and ) | |
| ) | |
| RONNIE HAYMORE, ) | |
| ) | |
| and ) | |
| ) | |
| S. HODNETT, ) | |
| ) | |
| and ) | |
| ) | |
| LATOYA KEENE, ) | |
| ) | |
| and ) | |
| ) | |

| | |
|---|---|
| MARIA MIRAGLIA, | ) |
| | ) |
| and | ) |
| | ) |
| LEATRICE SUITT, | ) |
| | ) |
| and | ) |
| | ) |
| TERRY TOLER, | ) |
| | ) |
| and | ) |
| | ) |
| SANDRA TUCK, | ) |
| | ) |
| and | ) |
| | ) |
| SARA WEAVER, | ) |
| | ) |
| and | ) |
| | ) |
| MARY WILLIAMS, | ) |
| | ) |
| Defendants. | ) |

Preliminary Statement and Jurisdiction

1. Over a period of months, health services providers at the Green Rock Correctional Center ("Green Rock") failed to give proper care to Jeffrey Edwards, who had uncontrolled diabetes and increasingly severe diabetic ulcers on his feet while incarcerated there. Mr. Edwards was denied medical and dietary care that responded to his serious medical needs, including woefully deficient assessment, management and treatment of his diabetes and diabetic foot wounds. Within three months of his arrival at Green Rock, Mr. Edwards' right foot became so infected that it had to be amputated. Mr. Edwards now sues those responsible for not providing him with the care he manifestly required. This lawsuit arises under the Eighth

Amendment to the United States Constitution and 42 U.S.C. §1983. The Court has jurisdiction pursuant to 28 U.S.C. §1331. The Court has supplemental jurisdiction over the state law tort claim for gross negligence, which arises out of the same nucleus of operative facts as give rise to the federal claim.

Parties

2. At all relevant times, Jeffrey Edwards was a 47-year-old diabetic inmate of Green Rock, a Virginia Department of Corrections ("VDOC") correctional facility. Mr. Edwards' release from incarceration is scheduled for August 2026.

3. At all relevant times, Defendant Dr. Laurence Wang was employed by VDOC to provide medical services to inmates at Green Rock. He began working for VDOC in 2007. At all times relevant, Dr. Wang was Mr. Edwards' treating physician and knew that he had diabetes. Dr. Wang is sued in his individual capacity for damages.

4. At all relevant times, Defendant Carrie Mayes, a nurse, was the Director of Nursing of the Green Rock medical unit, with a supervisory role over the nursing care of Green Rock inmates. Director Mayes was responsible for providing clinical direction to the nursing staff, overseeing and guiding the nursing staff, and ensuring quality of medical care and patient safety. Director Mayes also treated Mr. Edwards and knew that he had diabetes. Director Mayes is sued in her individual capacity for damages.

5. Defendants Theresa Autry, RN, Sheila Crockett, RN, Kiera French-Torres, RN, Ronnie Haymore, RN, S. Hodnett, Latoya Keene, RN, Maria Miraglia, RN, Leatrice Suitt, RN, Terry Toler, RN, Sandra Tuck, RN, Sara Weaver, NPC, and Mary Williams (collectively,

"Defendant Nurses") were, at all relevant times, VDOC employees at the Green Rock medical unit between February and May 2023. Each had direct contact with Mr. Edwards as part of his treatment team. Each was aware of his diabetes and of the condition of his foot. Each of them recklessly failed to provide him, or see that he was provided with, adequate care for his diabetic condition and foot ulcers. Defendant Nurses are sued in their individual capacities for damages.

Claim for Relief

6. In February 2023, Jeffrey Edwards entered Green Rock on his own two feet. Due to woefully deficient medical and nutritional diabetic care at Green Rock, Mr. Edwards suffered a severely infected diabetic right foot less than three months later, and a resulting below the knee amputation. Come August 2026, Mr. Edwards will be released from incarceration relying on a wheelchair or a prosthetic limb.

7. Adequate diabetes treatment requires prompt assessment and testing of a patient's neurological condition, including sensation, motor function, and vascular competence. Vascular testing is necessary to identify conditions, such as venous reflux, that impact blood flow to the feet, slow down healing and undermine the efficacy of oral antibiotic medications. An adequate diabetes treatment plan necessarily incorporates assessment and testing results, and controls blood sugar through medication management and diet. For incarcerated diabetes patients, medication management must align with dietary conditions in the facility.

8. Among the physiological complications associated with diabetes are foot ulcers –open wounds on the feet – and a delayed healing response to those ulcers. People with diabetes and venous reflux are at heightened risk of ulcers and infections of these ulcers, making early

intervention essential. When not cared for promptly and properly, even skin conditions that seem minor can lead to a serious infection with severe consequences, like loss of limb or life. Diabetic patients with unhealing wounds require a wound culture and sensitivity test, which together identify bacteria in the wound, and identify the appropriate antibiotics to fight the bacteria, heal the wound, and reduce the risk of severe infection and amputation. Problems with healing are further exacerbated when a diabetic patient's blood sugars remain consistently high – whether due to a diet inappropriate for a diabetic, insulin resistance, or a combination of both.

9. Mr. Edwards arrived at Green Rock on February 15, 2023, as a transfer from Nottaway Correctional Center ("Nottaway"). Mr. Edwards had developed his first diabetic foot ulcer while incarcerated at Nottaway. There, a doctor started Mr. Edwards on a course of oral antibiotic, Keflex, ordered a wound care consultation, and a consultation by an in-house doctor "ASAP on Monday." Mr. Edwards was transferred from Nottaway to Green Rock before the wound care appointment could occur.

10. Mr. Edwards arrived at the medical observation unit at Green Rock on February 15, 2023, with an infected wound on his left great toe, and on his right foot, dry, flaky patches and hardening skin on the great toe. The Nottaway medical chart that arrived with him at Green Rock identified Mr. Edwards' diabetic left foot ulcer and recommended a wound care appointment.

11. From the time of Mr. Edwards' arrival at Green Rock, Dr. Wang, Director Mayes and Defendant Nurses each individually and/or collectively delayed necessary assessments, testing and referrals, and failed to order and/or implement necessary care – all in violation of the applicable standard of care and all resulting in uncontrolled blood sugar levels, worsening wounds, infection, and irreversible complications. Instead of medical treatment calculated to

meet his serious medical need, they employed evidently uninformed, ineffective, or superficial treatments, or none at all.

12. Beginning with his arrival at Green Rock, Director Mayes had access to Mr. Edwards' treatment log, and during the relevant period, she reviewed his treatment log and treated Mr. Edwards directly. Yet, she failed to adequately direct, guide and supervise Defendant Nurses in their treatment of Mr. Edwards.

13. Upon Mr. Edwards' arrival at Green Rock, Nurse Maria Miraglia conducted a medical "review" with Mr. Edwards, which recorded his vital signs, and documented his current medical conditions and medications as obtained from Nottaway. Dr. Wang ordered that he stay in the medical unit, and receive daily cleaning and dressing of the wound specific to his left great toe. Dr. Wang's order that day did not address his right foot. Despite the left foot wound as evidence of diabetic complication, neither Dr. Wang, Director Mayes, nor Nurse Miraglia conducted or ordered any testing or assessment to inform an appropriate treatment plan for his diabetes. Nor did Director Mayes order medical unit staff to undertake these necessary steps or see to it that such steps be taken upon an inmate's arrival.

14. During the relevant period, the diabetes food tray available to Mr. Edwards featured primarily the same starch heavy food as the non-diabetic tray, with a difference only in the substitution of a fruit for the standard dessert option.

15. Mr. Edwards discussed with Dr. Wang his need for appropriate food to help control his blood sugar. Dr. Wang failed to address Mr. Edwards' nutritional needs specific to his diabetes and the resulting complications. Either Dr. Wang failed to prescribe an appropriate diabetic diet for Mr. Edwards, or Dr. Wang failed to see to its implementation. The result was

that Mr. Edwards did not receive the modified meal plan or even nutritional supplements that he required to control his blood sugar. As a result, Mr. Edwards had no choice but to eat meals lower in protein and heavy in bread, pasta, and other high carbohydrate foods that caused high blood glucose.

16.  During all relevant times, Mr. Edwards' daily fasting blood sugar remained between high and dangerously high levels. Dr. Wang failed to assess Mr. Edwards' medication in the context of Green Rock's daily menu, and adjust his medication for tighter glucose control in light of dietary carbohydrate counts. In fact, during the relevant period, Dr. Wang made no changes to the diabetes medication regimen that had come with Mr. Edwards from Nottaway and was failing to keep his blood sugar under control.

17.  Mr. Edwards' consistently high blood sugar at Green Rock contributed to the difficulties he experienced healing his existing foot ulcers and also made him more ulcer prone. Slow healing wounds kept Mr. Edwards at high risk of infection in his feet. These conditions made proper wound care even more critical.

18.  By Feb 21, 2023, within a week of arrival at Green Rock, and after having been treated by Nurses Teresa Autry, Ronnie Haymore, and S. Hodnett, Mr. Edwards had a diabetic wound on his right foot to go along with the wound on the left foot, and no outside wound care appointment had yet been scheduled. That day, Dr. Wang prescribed two weeks of daily foot dressing changes with a topical antibiotic. He ordered one gel insole for one of Mr. Edwards' shoes, which was never issued to Mr. Edwards. The next day, February 22, Dr. Wang ordered that the outside wound care consult be scheduled.

19. In his order for a wound care consult, Dr. Wang failed to include an order for a wound culture and sensitivity test to determine the appropriate antibiotic for Mr. Edwards; his feet. Without undertaking to determine whether Bactrim was an appropriate antibiotic for his patient, Dr. Wang discontinued the Keflex prescription and prescribed Mr. Edwards four weeks of Bactrim 800-160 DS, to end March 24, 2023.

20. By February 27, 2023, Dr. Wang released Mr. Edwards from the medical observation unit to general inmate housing. That day, just before his release from the medical unit, Nurse Miraglia observed that the top of Mr. Edwards' right foot was oozing yellow exudate, and that a wound on his right heel was still draining fluid. Dr. Wang ordered daily dressing of his right heel, but did not order the wound culture. Nor did Dr. Wang confirm that the outside wound care appointment he had ordered the week before had occurred or at least been scheduled. It had not been scheduled, despite Mr. Edwards having been seen by Nurses Crockett, French-Torres, Keene, Miraglia and Williams since Dr. Wang ordered the appointment.

21. For the next two weeks, Nurses Toler and Williams, and other nurses, saw Mr. Edwards' foot ulcers persist on both feet. No outside wound care appointment was scheduled or alternative course of treatment implemented.

22. By March 11, 2023, Dr. Wang, Director Mayes and Defendant Nurses still had not seen to it that a wound care appointment was scheduled. When he went to the medical unit that day, Mr. Edwards' foot wounds were oozing and bleeding and his toes were swollen. Mr. Edwards asked nursing staff when his outside appointment would occur. Nurse Miraglia, who changed his foot dressings that day and observed the condition of his feet, stated that she would verify that the appointment had been made. Nurse Miraglia was the next to treat Mr. Edwards

two days later. She provided no update on the outside wound care appointment. She noted that the condition of his feet had not improved, and advised that he take his antibiotics as prescribed. In fact, Mr. Edwards had been taking his oral antibiotic, Bactrim, as prescribed. It was simply not working. Still, no wound culture with sensitivity test was ordered to determine the appropriate antibiotic to treat Mr. Edwards' foot.

23. Mr. Edwards was finally sent to an outside wound care appointment on March 29, 2023, over six weeks after Nottaway had recommended it to Green Rock's medical staff. Mr. Edwards was seen by Dr. William McConahey at the SOVAH wound care center. By then, Mr. Edwards had for three months been experiencing chronic swelling in his feet and bleeding and oozing wounds. At the appointment, Dr. McConahey mechanically debrided the wounds on Mr. Edwards' feet. Dr. McConahey's wound assessment for each foot noted a "medium" necrotic amount (34-66%), impacting the fat layer.

24. Dr. McConahey provided new, specific wound care instructions for cleaning and dressing of Mr. Edwards' feet, to which adherence was essential to healing ulceration and preventing the spread of infection. Dr. McConahey ordered the use of a saline wash to clean each wound, and specific wound dressings for both feet – Hydrofera Blue Classic Foam, ABD Pads and Optifoam non-adhesive dressing – with dressings to be changed three times a week. Dr. McConahey also prescribed offloading shoes to Mr. Edwards.

25. At the March 29 appointment, Dr. McConahey ordered various vascular tests, including a bilateral venous reflux study of Mr. Edwards' legs to identify vascular problems that might be impacting blood flow to his feet. Dr. McConahey also diagnosed Mr. Edwards with diabetic neuropathy, or nerve damage.

26. At the appointment, Dr. McConahey also identified Mr. Edwards as a high risk for poor nutrition due to his lack of dietary choices, with tooth and mouth issues that made it hard for him to eat.

27. March 2023 closed with active wounds on both of Mr. Edwards' feet, and with no wound culture having been done.

28. In April 2023, the condition of Mr. Edwards' feet, and his medical care at Green Rock, deteriorated. Wounds on each foot persisted or proliferated, as did the edema in his lower legs. This despite Mr. Edwards regularly seeking out care at the medical unit and taking his prescribed medications.

29. At Green Rock, Dr. McConahey's March 29, 2023 wound dressing orders were hand-written in Mr. Edwards' Health Services Complaint Form, a chronological log of treatment notes. But the instructions were not placed in Mr. Edwards' electronic chart.

30. Nurses who treated Mr. Edwards in April did not adhere to the wound care protocol first ordered by Dr. McConahey at the end of March 2023, and again at an April 18, 2023 follow up appointment. Nurse Suitt failed to use saline to clean his wound. Though they introduced the use of Hydrofera dressing, nurses, including Nurses Autry, Miraglia, Suitt, Toler and Weaver, failed to use ABD pads or Optifoam dressing as Dr. McConahey had ordered to encourage healing. On April 20, 2023, more than 3 weeks after Dr. McConahey first issued the wound dressing protocols, ABD pads and Optifoam dressing were still "out of stock" at Green Rock. These dressings had not been ordered by Dr. Wang, Director Mayes, or Defendant Nurses treating Mr. Edwards in April, and appear to have never been obtained for Mr. Edwards' care during relevant times. Defendant Nurses treating him in April failed to adequately and

consistently document their treatment steps and/or failed to change Mr. Edwards' dressing at least three times each week as ordered. Director Mayes failed to order Defendant Nurses to adhere to ordered treatment protocols, or document their treatment.

31. On April 8, 2023, Mr. Edwards reported to Nurse Practitioner Sara Weaver that he had been experiencing foot edema since his arrival at Green Rock. Nurse Weaver herself observed stage three and four edema in his feet that day, and prescribed Lasix, which treats edema. The prescription was not issued to Mr. Edwards. On April 13, Nurse Toler again observed edema in Mr. Edwards' foot and instructed that Lasix begin "soon". It did not. The medical unit would not issue Lasix to Mr. Edwards until nearly a month later, just before his amputation.

32. Mr. Edwards' wounds began to smell foul in April 2023, as observed by Nurses Suitt, Toler, and Weaver. Despite this sign of infection, neither Dr. Wang, Director Mayes, nor Defendant Nurses secured a wound culture for Mr. Edwards. Nor did Dr. Wang increase the frequency of cleaning and dressing of wounds, or purchase appropriate supplies, or even address staff noncompliance with the wound cleaning regimen in place, or documentation thereof.

33. Mr. Edwards' April 10, 2023 lab tests showed that he had low Vitamin D levels, which is linked to higher incidents of foot ulcers in diabetic patients, and low Vitamin C levels, which can reduce glycemic control. The lab report also showed that Mr. Edwards had a high blood sedimentation rate, which is associated with infections, tissue damage and necrosis. Dr. Wang failed to implement treatment responsive to the findings, not even ordering nutritional supplements.

34. On April 12, 2023, eight weeks after Mr. Edwards' admission to the Green Rock medical unit and two weeks after Dr. McConahey's ultrasound order, Mr. Edwards finally had an ultrasound of his legs to check for venous reflux, a condition that causes poor blood circulation and delays healing of wounds. The results showed that he indeed suffered from venous reflux. This additional diagnosis prompted no change in care or treatment plan to prevent infection or help heal Mr. Edwards' worsening wounds. In fact, the ultrasound results were not even placed in Mr. Edwards' chart for Dr. Wang's review until April 24, only after Mr. Edwards reported to Nurse Practitioner Weaver that the test had been completed, which prompted her to look for the results.

35. On April 18, 2023, Mr. Edwards had a follow up wound care appointment with Dr. McConahey – an appointment that should have been scheduled for April 12, 2023. Dr. McConahey debrided Mr. Edwards' foot wounds again, and again prescribed the wound dressing regimen. Dr. McConahey also recommended the enforcement of off-loading measures to keep Mr. Edwards off of his feet. All Defendants failed to use available means to enforce offloading.

36. On April 22, 2023, nursing staff noted new injuries to Mr. Edwards' right foot, at the base of his second, third and fourth toes, with no healed areas at the borders.

37. In response to Mr. Edwards' worsening condition in April 2023, Mr. Edwards was offered superficial treatments or none at all. For example, on April 23, Mr. Edwards reported to Nurse Practitioner Weaver that he had new areas of skin flaking off on his buttocks and upper thigh, and expressed concerns about long healing time for his wounds. In response, she issued him Lubriderm skin lotion, commonly used by healthy people to treat garden variety dry skin.

By April 29, at a visit with Nurse Autry, Mr. Edwards complained of an aching right leg. Nurse Autry and Dr. Wang responded by issuing him Bengay topical rub. Neither Dr. Wang, Director Mayes, nor Nurses Autry or Weaver undertook or ordered any assessments of or changes to his treatment in response to these apparent new developments in his diabetes complications.

38. In late April 2023, Mr. Edwards reported to a corrections officer on duty that he wanted to go to the medical unit due to the worsening of his foot, including bleeding and a foul odor. He was ordered to wait until the following morning.

39. Mr. Edwards reported his worsening feet to the nurse at his diabetes check, but was turned away because the nurse was too busy to see him. That night he went to bed with feverish chills and night sweats.

40. On May 1, 2023, when Mr. Edwards went to the medical unit, the sock on his right foot was saturated with blood, and the fourth toe was swollen and bleeding. His right foot had discoloration that the treating nurse identified as a "contusion," though Mr. Edwards had not reported foot trauma. The unidentified nurse referred him to Dr. Wang to assess the "contusion" and possible avulsion of skin on the right fourth toe. Dr. Wang did not see him on May 1, 2023.

41. On May 2, 2023, Mr. Edwards went back to the medical unit and reported to Nurse Toler that he had increased pain in his right leg. Nurse Toler observed "much" odor and "much" blood from the wounds in his right foot. Mr. Edwards' fourth toe was very edematous, and split open, with dark areas in the inner toe. Nurse Toler remarked that he would probably lose his toe. Nurse Toler notified Dr. Wang.

42. Dr. Wang saw Mr. Edwards later on May 2, confirming the foul odor from his right foot, and the new lesion on his right fourth toe, with visible necrotic skin. With no wound culture results to guide him, Dr. Wang ordered Bactrim 800-160 DS – the same oral antibiotic that had unsuccessfully treated Mr. Edwards' right foot in March. Dr. Wang also prescribed Lamisil 25 and Diflucan, over the counter topical and oral antifungals, respectively.

43. Dr. Wang failed to send Mr. Edwards to the hospital for urgent treatment of an obvious foot infection, or immediately send him to a vascular or other specialist to assess the source of the discoloration on his foot for likely necrosis, or otherwise address the worsening infection.

44. Between May 2-4, 2023, Mr. Edwards did not receive his Bactrim, Diflucan, or Lamisil.

45. On May 3, 2023, Dr. Wang finally ordered a wound culture of Mr. Edwards' foot, as noted by Director Mayes.

46. On May 4, 2023, Mr. Edwards was sent back to Dr. McConahey for the previously scheduled two-week follow up from his last appointment there.

47. Dr. McConahey debrided the two wounds that he had previously debrided on March 29 and April 18, 2023. A third wound, at the right fourth toe, had large necrotic amount, with a foul odor even after cleaning, that involved necrosis of muscle. Dr. McConahey confirmed that the infection was so serious that Mr. Edwards was likely to lose his toe. Dr. McConahey debrided this wound down to open bone. Dr. McConahey also ordered a new dressing regimen for Mr. Edwards' right foot, to include AquacelAg Advantage, which is an antimicrobial dressing, and Curad Xeroform Sterile Dressing,

48. On May 5, 2023, back in the Green Rock medical unit, Mr. Edwards was issued the Bactrim that had been prescribed days before, and on May 6 and 7, was also issued Lasix and Diflucan as previously prescribed. He never did receive the Lamisil topical antifungal.

49. On May 5 and 6, 2023, Mr. Edwards' right foot wounds were emanating a foul odor with continued presence of necrotic skin when he was seen by Nurses Autry, Crockett, Miraglia and Tuck. Yet, these nurses did not follow Dr. McConahey's May 2, 2023 ordered wound cleaning regimen.

50. By May 7, 2023, when he was seen by Nurse Miraglia, the odor permeated the room. The fourth toe was completely black on the bottom, and red and swollen on top, with new areas of apparent infection. Bloody puss leaked out of his right foot. Only then was his foot cleaned with the AquacelAg dressing as Dr. McConahey had ordered on May 2.

51. On the morning of May 7, 2023, Nurses Miraglia and Weaver finally sent Mr. Edwards to the emergency room. From there, Mr. Edwards was admitted to Lynchburg General Hospital.

52. At Lynchburg General Hospital, Mr. Edwards was promptly examined and immediately started on two antibiotics via IV. The diabetic ulcer on the fourth right toe had developed an infection so severe and dangerous that the toe required amputation. Imaging was needed to determine whether the right foot could be saved.

53. Upon review of imaging on May 8, 2023, doctors determined that the toe and foot could not be saved. The infection was so severe that a below-the-knee amputation was necessary. The next day, May 9, Mr. Edwards' right leg was amputated below the knee.

54. On May 11, 2023, Green Rock received the results of the wound culture that Dr. Wang had ordered on May 3. The results showed that Mr. Edwards' right foot had been infected with beta hemolytic streptococcus, and identified penicillin and ampicillin – not Bactrim – as appropriate antibiotics for this strain of bacteria. Bactrim alone was not appropriate for treatment of this bacteria. By May 11, this information was too little and too late to save his right leg.

55. After discharge from Lynchburg General Hospital, Mr. Edwards was transferred to a rehabilitation facility. At the facility, Mr. Edwards required complex, multi-disciplinary intensive therapy, pharmacy medication review, education, monitoring and nursing. There, as a part of his diabetes care, he was provided meals with double protein added, supplemented by a protein enriched drink.

56. Mr. Edwards' foot was amputated because defendants had failed to properly and promptly test, assess and implement appropriate treatment according to his known, serious and worsening medical need. They had delayed or failed to provide prescribed medications and access to necessary outside medical care. They failed to adequately provide supplies for and document his care.

57. As a result of defendants' actions set forth above, Mr. Edwards has been rendered permanently disfigured and disabled. Mr. Edwards lost his right foot; suffered past, present and future pain, including "phantom pain" in the lost foot; severe emotional distress; humiliation and embarrassment; future substantial financial expenses associated with necessary medical care and replacement of his prosthesis for the rest of his life; significant future loss of income due to the

inability to do the commercial driving work that he had done prior to his amputation; and other losses.

## Causes of Action

### Count I: All Defendants

### Eighth Amendment Violation: Deliberate Indifference to Serious Medical Need

58. By their actions and inactions set forth above, for nearly three months, the defendants demonstrated deliberate indifference to Mr. Edwards' serious and worsening medical condition, including the heightened risks and healing difficulties experienced by Mr. Edwards as a patient with diabetes suffering over time with high blood sugar and open wounds on his feet. This pattern of deliberate indifference led to unreasonable and glaringly insufficient medical care of Mr. Edwards, protracted pain and suffering, worsening of the diabetic wounds and deepening of the infection on his right foot, and the resulting avoidable amputation that left him permanently disfigured and disabled. The claim for his resulting damages arises under the Eighth Amendment to the United States Constitution and 42 U.S.C. §1983.

### Count II: All Defendants

### Medical Malpractice and Gross Negligence

59. By knowingly denying Mr. Edwards manifestly necessary medical care as set forth above, the defendants failed to provide him with the skill and diligence of reasonably prudent Virginia practitioners in their respective fields of practice, including medicine, nursing, and the administration of medical care. They each thereby fell below the standard or duty of care required under Virginia law, demonstrated gross negligence and materially contributed to his suffering and loss of his foot.

\*\*\*

Wherefore, Mr. Edwards asks this Court for an order:

Granting him actual damages and punitive damages against the defendants, jointly and severally, appropriate to the proof at trial;

Awarding him costs and reasonable attorney's fees; and

Granting such other relief as is just.

Mr. Edwards requests trial by jury.

          Respectfully submitted,

          JEFFREY EDWARDS,

          By counsel

Dated:   April 17, 2025

Counsel for Plaintiff:

//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
vmg@robinhoodesq.com

EdwardsJeffrey\Pleadings\2025-0417-Complaint

//s// Bernadette Armand
Bernadette Armand, #81332
Bernadette Armand Law PLLC
400 5th Street NW, Suite 350
Washington, D.C. 20001
202.696.4987
bernadette@armandlaw.com

//s// Abigail S. Grand
Abigail S. Grand, #100578
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
703.684.1100 / Fax: 703.684.1104
agrand@robinhoodesq.com